147. Defendant took a number of overt acts in furtherance of its scheme, including but not limited to:

(a) setting a wholesale price at which it actually sold Lupron®;

(b) listing the AWP of Lupron® in *Red Book, Price Alert* and other publications at an amount materially greater than the actual average wholesale price;

(c) contacting *Red Book, Price Alert* and other publications for the purpose of falsely setting and controlling the listed AWP;

(d) providing information to health care providers about *Red Book* and *Price Alert*-quoted AWP and the actual average wholesale price for Lupron®;

(e) creating and disseminating marketing and sales materials that showed the spread between the actual average wholesale price and the AWP reported in *Red Book, Price Alert* and other publications and other industry publications for Medicare reimbursement;

(f) creating and disseminating marketing and sales materials for health care providers discussing how the use of free samples could increase their profits. (The "materials" were created at the local level—resulting in what the FDA calls "homemade bread." TAP encouraged this localized production of marketing materials through sales contests and awards);

(g) creating and disseminating marketing and sales materials for health care providers discussing other financial inducements available from the Defendant for the usage of Lupron®. (This material was produced and promoted on the local level by district managers, who were in turn instructed on using the materials by "higher-ups" within TAP's home office and marketing & sales departments); and

(h) inducing patients and third-party payors, such as Aetna, to pay inflated direct reimbursements, co-payments, coinsurance and deductibles for Lupron® in reliance on the inflated AWP.

148. By reason of the foregoing, and as a proximate cause of said conspiracy and acts committed in furtherance thereof, Aetna has suffered grievous injury and has been damaged as alleged herein.

149. The acts alleged were malicious, oppressive and contrived for the purpose of achieving the objects of the conspiracy; therefore, Aetna is entitled to punitive damages.

## COUNT VIII
### DIRECTING TORTIOUS CONDUCT

150. Plaintiff incorporates the preceding paragraphs as if fully set forth.

151. In order to induce Aetna to overpay for Lupron® as alleged herein, Defendant and/or its agents directed and/or caused health care providers to make multiple fraudulent and/or negligent misrepresentations to Aetna, including:

(a) setting a wholesale price at which it actually sold Lupron®;

(b) listing the AWP of Lupron® in *Red Book, Price Alert* and other publications at an amount materially greater than the actual average wholesale price;

(c) contacting *Red Book, Price Alert* and other publications for the purpose of falsely setting and controlling the listed AWP;

(d) providing information to health care providers about both *Blue Book* and *Red Book* and *Price Alert*-quoted AWP and the actual average wholesale price for Lupron®;

(e) creating and disseminating marketing and sales materials that showed the spread between the actual average wholesale price and the AWP reported in *Red Book, Price Alert* and other publications and other industry publications for Medicare reimbursement;

(f) creating and disseminating marketing and sales materials for health care providers discussing how the use of free samples could increase their profits. (The "materials" were created at the local level—resulting in what the FDA calls "homemade bread." TAP encouraged this localized production of marketing materials through sales contests and awards);

(g) creating and disseminating marketing and sales materials for health care providers discussing other financial inducements available from the Defendant for the usage of Lupron®. (This material was produced and promoted on the local level by district managers,

who were in turn instructed on using the materials by "higher-ups" within TAP's home office and marketing & sales departments);and

   (h) inducing patients and third-party payors, such as Aetna, to pay inflated direct reimbursements, co-payments, coinsurance and deductibles for Lupron® in reliance on the inflated AWP.

  152. The Defendant knew of, should have known of or recklessly disregarded the above-detailed misrepresentations and omissions and affirmatively induced or substantially encouraged health care providers to provide this false and misleading information to Aetna.

  153. The Defendant knew of, should have known of or recklessly disregarded the fact that health care providers used the Lupron® overbilling scheme described herein as a means of increasing their profits on Lupron® prescriptions.

  154. The Defendant knew of, should have known of or recklessly disregarded the fact that increasing providers' profits on Lupron® would result in greater market share for Lupron®. This effort to increase market share was the primary reason the Defendant implemented the Lupron® marketing and sales practice scheme described herein.

  155. The Defendant's effort to enrich health care providers at Aetna's expense in an attempt to increase market share demonstrates that the Defendant was acting in concert with health care providers to fraudulently induce Aetna to overpay for Lupron®.

156. Had Aetna known of the Defendant's fraudulent efforts to induce health care providers to overbill for Lupron®, and the Defendant's efforts to direct this tortious conduct, Aetna would not have substantially overpaid for Lupron®.

157. By reason of the foregoing, and as a proximate cause of said tortious activity and acts committed in furtherance thereof, Aetna has suffered grievous injury and has been damaged as alleged herein.

158. The acts alleged were malicious, oppressive and contrived for the purpose of achieving the objects of the tortious conduct; therefore, Aetna is entitled to punitive damages.

## COUNT IX
### AIDING AND ABETTING TORTIOUS CONDUCT

159. Plaintiff incorporates the preceding paragraphs as if fully set forth.

160. In order to induce Aetna to overpay for Lupron® as alleged herein, the Defendant and/or its agents negligently, recklessly or intentionally aided and abetted health care providers in making multiple fraudulent and/or negligent misrepresentations to Aetna, including:

(a) setting a wholesale price at which it actually sold Lupron®;

(b) listing the AWP of Lupron® in *Red Book, Price Alert* and other publications at an amount materially greater than the actual average wholesale price;

(c) contacting *Red Book, Price Alert* and other publications for the purpose of falsely setting and controlling the listed AWP;

(d) sending information to health care providers about *Red Book* and *Price Alert*-quoted AWP and the actual average wholesale price for Lupron®;

(e) creating and disseminating marketing and sales materials that showed the spread between the actual average wholesale price and the AWP reported in *Red Book*, *Price Alert* and other publications and other industry publications for Medicare reimbursement;

(f) creating and disseminating marketing and sales materials for health care providers discussing how the use of free samples could increase their profits. (The "materials" were created at the local level—resulting in what the FDA calls "homemade bread." TAP encouraged this localized production of marketing materials through sales contests and awards);

(g) creating and disseminating marketing and sales materials for health care providers discussing other financial inducements available from the Defendant for the usage of Lupron®. (This material was produced and promoted on the local level by district managers, who were in turn instructed on using the materials by "higher-ups" within TAP's home office and marketing & sales departments); and

(h) inducing patients and third-party payors, such as Aetna, to pay inflated direct reimbursements, co-payments, coinsurance and deductibles for Lupron® in reliance on the inflated AWP.

161. The Defendant was aware of the above-detailed misrepresentations and omissions and negligently, recklessly or intentionally aided and abetted health care providers who provided this false and misleading information to Aetna.

162. The Defendant knew, should have known or recklessly disregarded the fact that health care providers used the Lupron® overbilling scheme described herein as a means of increasing their profits on Lupron® prescriptions.

163. The Defendant was aware that increasing providers' profits on Lupron® would result in greater market share for Lupron®. This effort to increase market share was the primary reason the Defendant implemented the Lupron® scheme described herein.

164. The Defendant's effort to enrich health care providers at Aetna's expense in an attempt to increase market share demonstrates that the Defendant was negligently, recklessly or intentionally aiding and abetting the health care providers' efforts to fraudulently induce Aetna to overpay for Lupron®.

165. Had Aetna known of the Defendant's efforts to negligently, recklessly or intentionally aid and abet health care providers' efforts to overbill for Lupron®, Aetna would not have substantially overpaid for Lupron®.

166. By reason of the foregoing, and as a proximate cause of said tortious activity and acts committed in furtherance thereof, Aetna has suffered grievous injury and has been damaged as alleged herein.

167. The acts alleged were malicious, oppressive and contrived for the purpose of achieving the objects of the tortious conduct; therefore, Aetna is entitled to punitive damages.

## COUNT X
## NEGLIGENCE PER SE

168. Plaintiff incorporates the preceding paragraphs as if fully set forth.

169. TAP has pleaded guilty to conspiracy to defraud the United States by causing the sale of drug samples in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 333(b) and 331(t).

170. The statutes the Defendant has admitted to violating, 18 U.S.C. § 371 and 21 U.S.C. §§ 333(b) and 331(t), were clearly designed to prevent harm to the public, and to protect the interests of insurers like Aetna, who rely upon those statutes to prevent pharmaceutical companies like the Defendant from directing, encouraging, conspiring with and/or aiding and abetting health care providers in connection with the fraudulent submission of claims for reimbursement for prescribed drug samples.

171. The Defendant, in violating 18 U.S.C. § 371 and 21 U.S.C. §§ 333(b) and 331(t) caused Aetna to issue reimbursements for prescribed drug samples.

172. By reason of the foregoing, and as a proximate cause of said negligence per se, Aetna has suffered grievous injury and has been damaged as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(a) On Plaintiff's First, Second and Third Counts under RICO, three times the damages Plaintiff has sustained as a result of the Defendant's conduct, such amount to be determined at trial, plus Plaintiff's costs in this suit, including reasonable attorneys' fees and expenses, and prejudgment and post-judgment interest;

(b) On Plaintiff's Fourth Count under Pennsylvania's Insurance Fraud Statute, three times the damages Plaintiff has sustained as a result of the Defendant's conduct, such amount to be determined at trial, plus Plaintiff's investigative expenses and costs of suit, reasonable attorneys' fees and expenses, and prejudgment and post-judgment interest;

(c) On Plaintiff's Fifth, Seventh, Eighth and Ninth Counts, actual and punitive damages, such amounts to be determined at trial, plus costs of suit, reasonable attorneys' fees and expenses, and prejudgment and post-judgment interest;

(d) On Plaintiff's Sixth and Tenth Counts, actual damages, such amounts to be determined at trial, plus costs of suit, reasonable attorneys' fees and expenses, and prejudgment and post-judgment interest; and

(e)   Such other and further relief as may be just and proper.

*/s/ Elizabeth Ainslie/OSB*

Elizabeth K. Ainslie, Pa. Attorney I.D. No. 35870
Theresa E. Loscalzo, Pa. Attorney I.D. No. 52031
Jonathan S. Liss, Pa. Attorney I.D. No. 84565
O. Scott Barber, Pa. Attorney I.D. No. 84948
Attorneys for Plaintiff Aetna Health, Inc.

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000

   Of Counsel.

Dated: February 13, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, I caused a true copy of Aetna Health Inc.'s Amended Complaint to be served upon counsel listed below.

**Counsel for Abbott:**

Donald R. Frederico
McDermott Will & Emery
28 State Street, 34th Floor
Boston, MA 02109
**Via Overnight Delivery**

Joshua T. Buchman
McDermott Will & Emery
227 West Montroe Street
Chicago, IL 60606
**Via Overnight Delivery**

**Counsel for TAP Pharmaceuticals Inc.
and TAP Pharmaceutical Products, Inc.:**

Joseph O'Neil
Lavin Coleman O'Neil Ricci Finnarelli & Gray
510 Walnut Street, #1000
Philadelphia, PA 19106
**Via Hand Delivery**

Joseph F. Savage, Jr.
Testa, Hurwitz & Thibeault
High Street Tower
125 High Street
Boston, MA 02110
**Via Overnight Delivery**

Tina Tabachi
Jones, Day, Reavis & Pogue
77 West Wacker Drive
Chicago, IL 60601
**Via Overnight Delivery**

**Counsel for Takeda Chemical Industries, Ltd.:**

Martin F. Murphy
Bingham Dana
150 Federal Street
Boston, MA 02110
**Via Overnight Delivery**

Robert R. Stauffer
Jenner & Block, LLC
One IBM Plaza, 45th Floor
Chicago, IL 60611
**Via Overnight Mail**

**Plaintiffs' Counsel:**

Kathleen M. Donovan-Maher
Berman, DeValerio, Pease, Tabacco, Burt & Pucillo
One Liberty Square
Boston, MA 02109
**Via Overnight Delivery**

Thomas M. Sobol
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
**Via Overnight Delivery**

Jeffrey Kodroff
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103
**Via Hand Delivery**

Michael Hefter
Dewey Ballantine LLP
1301 Aevnue of the Americas
New York, NY 10019
**Via Overnight Delivery**

Richard W. Cohen
Lowey, Dannenberg, Bemporad & Selinger, P.C.
One North Lexington Avenue
White Plains, NY 10601
**Via Overnight Delivery**

Joseph Saveri
Lieff, Cabraser, Heimann & Bernstein LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
**Via Overnight Delivery**

Michael D. Hausfeld
Cohen, Milstein, Hausfeld & Toll
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
**Via Overnight Delivery**

J. Hoke Peacock
Susman & Godfrey
1000 Lousisana
Suire 5100
Houston, TX 77002-5096
**Via Overnight Delivery**

Charles A. Dauphin
Baxley, Dillard, Dauphin, McKnight & Barclift
2008 3rd Avenue South
Birmingham, Alabama 35233
**Via Overnight Delivery**

DATED: February 13, 2004

Jessica K. Watt, Esq.